UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAVEEN ANAND, | § | |
| | § | |
|    Plaintiff/Counterclaim-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-3181-B |
| | § | |
| HALLMARK FINANCIAL SERVICES, INC., | § | |
| | § | |
|    Defendant/Counterclaimant. | § | |

### MEMORANDIUM OPINION AND ORDER

Before the Court is Plaintiff/Counterclaim-Defendant Naveen Anand's Motion for Partial Summary Judgment on his breach of contract claim (Doc. 18). For the following reasons, the Court **DENIES** the Motion.

### I.
### BACKGROUND

This contract dispute involves an ex-CEO who, after his former company accused him of wrongdoing, insists that the company advance his costs for defending against the accusations. Anand previously served as Chief Executive Officer and President of Hallmark Financial Services, Inc. ("Hallmark"). Doc. 6, Am. Compl., ¶ 16; Doc. 12, Answer & Countercls., ¶¶ 51, 63. Hallmark is a Nevada corporation, headquartered in Texas, that is in the business of insurance underwriting. Doc. 6, Am. Compl., ¶ 10; Doc. 12, Answer & Countercls., ¶ 62. As an "Officer" of Hallmark, Anand is entitled to indemnification and advancement of defense costs for actions he took in that capacity, as specified under Article VII of the corporation's bylaws (the "Bylaws"). Doc. 20, Pl.'s App., Ex. A-1, 15-16. The question presented here is what circumstances trigger Hallmark's obligation to advance

defense costs.

A few years after Anand's time at Hallmark ended, on October 4, 2024, Hallmark's counsel sent Anand an email accusing him of breaching his fiduciary duties to Hallmark during his tenure as CEO. *Id.*, Ex. A-3, 35. Hallmark's accusation arose from a separate dispute Hallmark had with DARAG Financial Bermuda Inc. and DARAG Insurance (Guernsey) Limited (collectively, "DARAG"). *Id.* That separate dispute resulted in an arbitration award to DARAG in June 2023, after the "arbitration panel concluded that Hallmark had wrongfully suppressed certain claim case reserves in 2018 and 2019 and made multiple misstatements" to DARAG. *Id.* According to Hallmark, Anand—as CEO at the time—was responsible for the DARAG transaction, and his alleged breach of fiduciary duty caused "many millions of dollars in damages." *Id.* As a result, in that same email, Hallmark threatened to "commence legal proceedings against [Anand] in New York on October 15, 2024," unless he agreed to execute a tolling agreement. *Id.* If Anand executed the tolling agreement, Hallmark agreed to "defer filing a lawsuit." *Id.* Hallmark also attached an unfiled draft "copy of the summons with notice"[1] to the email (collectively, the "October 4 Communication"). *Id.* at 37-38. The draft summons named Anand the "Defendant" and claimed he breached his fiduciary duties to Hallmark by acting with "intentional misconduct and/or fraud" and caused damages "estimated to exceed $100 million." *Id.* at 38.

In response, on October 8, 2024, Anand sent Hallmark a demand for indemnification and advancement of defense costs with an attached undertaking committing Anand to reimburse Hallmark for the costs if a court ultimately disallowed indemnification. *Id.*, Ex. A-4, 40-42. On

---

[1] Under New York law, a Plaintiff can commence a lawsuit by filing a summons with notice in lieu of a complaint. *See* N.Y. C.P.L.R. 305(b) (McKinney).

October 14, 2024, Anand signed a thirty-day tolling agreement with Hallmark that was later extended for another thirty days. Doc. 32, Def.'s App., Ex. B, 7-8. On November 1, 2024, Anand sent Hallmark a second demand for indemnification and advancement and attached a signed undertaking and redacted invoices for legal services. Doc. 20, Pl.'s App., Ex. A-5, 44-53. On November 7, 2024, Hallmark denied Anand's advancement requests. *Id.*, Ex. A-6, 55-56.

On December 16, 2024, Anand and Hallmark agreed to extend the tolling agreement for another four months. Doc. 32, Def.'s App., Ex. A, 3. But two days later, Anand filed his Complaint for breach of contract in this Court. *Id.*; *see generally* Doc. 1., Compl. The next day, Anand amended his complaint. *See* Doc. 6, Am. Compl. ¶ 41.

On February 7, 2025, Hallmark filed its Answer, Affirmative Defenses, and Counterclaims, countersuing for breach of fiduciary duty, fraudulent concealment, and contribution. *See generally* Doc. 12, Answer & Countercls.

On February 20, 2025, Anand's counsel sent Hallmark a third demand for indemnification and advancement for the costs incurred in connection with Hallmark's counterclaims, once again with an attached undertaking committing Anand to pay if a court ultimately decided he was not entitled to indemnification. Doc. 20, Pl.'s App., Ex. A-7, 58-62.

Anand then filed this Motion for Partial Summary Judgment, seeking declaratory and injunctive relief for breach of contract. *See generally* Doc. 18. Mot. Summ. J. In his motion, Anand alleges—for the first time—that Hallmark breached the Bylaws by not agreeing to advance the expenses Anand incurred in defending against Hallmark's newly filed counterclaims. Doc. 19, Mot. Summ. J. Br., 13. The Court considers Anand's Motion for Partial Summary Judgment below.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine dispute exists as to any issue of material fact. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine dispute exists for trial, the court must view all evidence in the light most favorable to the non-movant. *See Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (other citations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted), and "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting former Fed R. Civ. P. 56(e)). Finally, the evidence that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

## III.

## ANALYSIS

Anand moves for summary judgment on his breach of contract claim. Anand asserts Hallmark breached the advancement provision in the Bylaws twice: first, when Hallmark failed to advance the costs Anand incurred during the period after Hallmark's October 4 Communication but before Hallmark filed its counterclaims on February 7, 2025; and second, when Hallmark failed to fulfill Anand's request for advancement of costs incurred in defending against Hallmark's counterclaims. Doc. 34. Pl.'s Reply, 9, n.5. For the first period, the Court concludes that Hallmark did not breach the Bylaws by rejecting Anand's requests to advance costs for responding to the mere threat of litigation. For the second period, the Court declines to consider Anand's entitlement to advancement when he was defending against Hallmark's counterclaims because those facts had not occurred until after Anand filed suit, so any resulting cause of action had not yet accrued and could not have been included in his Amended Complaint.

A.   *Anand's Original Breach of Contract Claim*

First, the Court engages in a choice-of-law analysis to determine which law governs the breach of contract claim. Second, the Court determines whether the Bylaws entitle Anand to advancement of expenses incurred during the period between Anand's receipt of the October 4 Communication and the filing of Hallmark's counterclaims.

1. <u>Anand's Breach of Contract Claim is Governed by Nevada Law</u>

Although not briefed by either party,[2] the Court must determine what law will govern the

---

[2] Anand first cited to Texas law in his Brief in support of the Motion for Partial Summary Judgment (Doc. 19, Mot. Summ. J. Br., 17) while Hallmark cited to Nevada law in its Response (Doc. 31, Resp., 7). Later, Anand stated Nevada law applied. Doc. 34, Reply, 10, n.3.

breach of contract claim. Choice of law is a threshold inquiry in diversity cases. *Faloona by Fredrickson v. Hustler Mag., Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citation omitted). When sitting in diversity jurisdiction, a federal court must apply the choice-of-law rules of the forum state—in this case Texas. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citation omitted).

In Texas, courts do not undertake a choice-of-law analysis absent "a true conflict of law." *Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 904 n.2 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see also R.R. Mgmt. Co.*, 428 F.3d at 222. When there is a conflict, "Texas law generally gives effect to contractual choice-of-law provisions." *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011) (citation omitted). "The Restatement recognizes that even if there is no explicit choice of law, use of legal terms or doctrines peculiar to one state 'may provide persuasive evidence that the parties wished to have this law applied.'" *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 232 (Tex. 2008) (citing Restatement § 187 cmt. a (1971)). For example, in *Sonat*, the Texas Supreme Court stated that a reference to Louisiana compensation law in the agreement "would undoubtedly require" the Court to apply Louisiana law if the case had concerned workers compensation. *See id.*

Here, the Bylaws state that the indemnification and advancement provisions of Article VII are "[s]ubject to the conditions and limitations expressed herein and in [Nevada Revised Statutes] Sections 78.702, 78.751 and 78.752[.]" Doc. 20, Pl.'s App., Ex. A-1, 16. In the same section, the Bylaws state that "[t]he provisions of this Article VII are to be deemed an element of the contract or engagement between [Hallmark] and each person who holds a position giving rise to indemnification," and "the indemnification provided in this Article VII may thus be enforced against the Corporation as a matter of contractual right." *Id.* Thus, the provision making Article VII

a contract explicitly incorporates by reference Nevada statutes.

The Court therefore determines that the parties intended breach of contract actions brought under Article VII of the Bylaws to be governed by Nevada law. *See Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 419 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("The most basic policy of contract law is the protection of the justified expectations of the parties.") (citation omitted); *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("Judicial respect for their choice promotes the policy of protecting their expectations."). Therefore, the Court will apply Nevada law to Anand's breach of contract claim.

2. <u>Because the October 4 Communication Does Not Constitute a "Proceeding," Anand is not entitled to Advancement Under the Bylaws</u>

The central disagreement between Anand and Hallmark is over whether the October 4 Communication—which threatened but did not initiate suit—triggers the advancement requirement in Article VII. Examining the contract for its plain and ordinary meaning, the Court concludes that the Bylaws unambiguously restrict advancement to situations where an "action, suit, or proceeding" exists, not simply situations where they are threatened. The Court also rejects Anand's argument that the plain and ordinary meaning of the term "proceeding" encompasses the October 4 Communication. Thus, the Court holds that Anand cannot prove as a matter of law that Hallmark breached the Bylaws by rejecting Anand's first two advancement requests.

   i. *Article VII of the Bylaws unambiguously restricts advancement to situations where an "action, suit, or proceeding" exists*

"Because the [B]ylaws are a contract, we interpret them as we would any other contract." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 673 (Nev. 2021). A court "initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will

be enforced as written." *Id.* (internal quotations and citation omitted). "Whether a contract is ambiguous likewise presents a question of law." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, . . . but ambiguity does not arise simply because the parties disagree on how to interpret their contract." *Id.* (citation omitted). Pursuant to Nevada law, "[i]n the absence of ambiguity or other factual complexities, contract interpretation presents a question of law that the district court may decide on summary judgment." *Id.* (internal quotations and citation omitted).

Article VII of the Bylaws, titled "Indemnification of Directors, Officers, and Other Persons," contains four sections: "Section 1. Scope of Indemnification"; "Section 2. Expense Advances"; "Section 3. Insurance, Other Financial Arrangements"; and "Section 4. Enforceability." Doc. 20, Pl.'s App., Ex. A-1, 15-16. Relevant to this case, Section 4 specifies that the Article VII contractual rights continue after termination of the tenure of a Hallmark director or officer. Section 1 sets up a wide range of situations where Hallmark must indemnify its current or former corporate director, officer, employee, or agent. Section 2 provides a right to advancement of expenses. And Section 4 specifies that Article VII may be enforced as a contract against the Corporation. The Court examines Article VII in detail below.

    a. Enforceability

Starting with "Section 4. Enforceability," Anand and Hallmark are parties to the agreement. Section 4 provides:

> The provisions of this Article VII are to be deemed an element of the contract or engagement between the Corporation and each person who holds a position giving rise to indemnification. Subject to the conditions and limitations expressed herein and in NRS Sections 78.7502, 78.751 and 78.752, the indemnification provided in this Article VII may thus be enforced against the Corporation as a matter of contractual right.

*Id.* at 16. Section 4 requires the Court to review Nevada Revised Statutes section 78.751 regarding the "conditions and limitations" when interpreting the Bylaws' advancement right. *Id.* Relevant to this Court's analysis, section 78.751(3)(b) states that the right to advancement "continues for a person who has ceased to be a director, officer, employee or agent[.]"

      b. Indemnification generally

Next, Section 1 sets up a broad scope of indemnification by requiring that Hallmark indemnify "[t]o the fullest extent authorized, permitted or required by NRS Section 78.7502." *Id.* at 15. The referenced statute—section 78.7502—lists the circumstances under which a Nevada corporation may choose to, within its discretion, indemnify its directors, officers, employees, and agents. So, the effect of Article VII, Section 1 of the Bylaws is to make mandatory all of the indemnification permitted or authorized by section 78.7502. As relevant here, subject to several conditions, section 78.7502(2) allows (and the contract therefore requires) Hallmark to "indemnify . . . any person who was or is a party *or is threatened to be made a party* to any *threatened*, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee, or agent" of Hallmark. § 78.7502(2) (emphases added). But "[i]ndemnification pursuant to this section may not be made for any claim, issue or matter as to which such a person has been adjudged by a court of competent jurisdiction . . . to be liable to the corporation or for amounts paid in settlement to the corporation[.]" *Id.* Thus, indemnification is ultimately available for expenses accrued in responding to an action, suit, or proceeding that is merely threatened but not yet commenced, as long as the person seeking to be indemnified is not found liable to the corporation by a court. *Id.*

      c.   Advancement

"Section 2. Expense Advances" controls whether an individual entitled to indemnification under Section 1 is further entitled to advancement of those expenses. Of particular relevance, Section 2 conspicuously omits the reference to threatened actions, suits, or proceedings found in Section 1 and narrows its availability to certain Hallmark personnel. It states:

> The expenses of officers and directors of the Corporation incurred in defending a civil or criminal action, suit or proceeding shall be paid by the Corporation as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he or she is not entitled to be indemnified by the Corporation. The provisions of this Section 2 do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

Doc. 20, Pl.'s App., Ex. A-1, 15.

The Court presumes that the omissions are meaningful. If the parties to the contract had intended to provide expense advancement for threatened proceedings, and to all employees, they would have said so in the text. "[P]articular words or phrases in a contract should generally not be considered in a vacuum and isolated from the context but rather in light of the entire contract and the intentions of the parties as so manifested." *Anderson v. Ford Ranch LLC*, 476 P.3d 928, 2020 WL 6955438, at *3 (Nev. Nov. 25, 2020) (quoting 11 William A. Lord, *Williston on Contracts* § 30:10 (4th ed. 2012)). Interpreting the text of Section 2 within the context of the entire Article VII, the Court "presume[s] that the inclusion or omission of" a phrase in different sections of Article VII is purposeful. *Cf. Knickmeyer v. State*, 408 P.3d 161, 165 (Nev. Ct. App. 2017) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 170 (2012)) (explaining rule with respect to statutory interpretation). Thus, a broader review of Article VII shows that the parties did not intend expense advancement, governed by Section 2, to extend to threatened proceedings in the

way that indemnification does generally.

The Court therefore concludes the contract language unambiguously imposes no obligation on Hallmark to advance defense costs for threatened actions, suits, or proceedings. Therefore, the Court enforces the contract as written and assigns its words their "plain, ordinary and popular meaning." *Tompkins v. Buttrum Const. Co. of Nevada*, 659 P.2d 865, 866 (Nev. 1983) (citations omitted); *see also* Restatement Second of Contracts § 202(3)(a) (1981).

   ii.   *A demand letter does not constitute a "proceeding"*

Notwithstanding the omission of "threatened" in Section 2, as discussed above, Anand argues that the plain and ordinary meaning of "proceeding," as used in Section 2, includes a threatened action. *See* Doc. 34, Reply, 25. To make this argument, Anand relies on Delaware precedent and the Model Business Corporation Act ("MBCA").

The Delaware Court of Chancery has stated, "the Model Business Corporation Act[] [is] the most authoritative source with a definition of proceeding in the precise context of advancement and indemnification[.]" *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 394 (Del. Ch. 2008). The MBCA broadly defines "proceeding" to include "any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative and whether formal or informal." *See* MBCA § 8.50.

This Court agrees with Anand that Delaware precedent is useful in evaluating advancement disputes when many states, including Nevada, have few cases on the subject. But for this interpretation issue, Anand's reliance on Delaware law suffers from two issues. First, Nevada, unlike Delaware, has not enacted the MBCA.[3] Therefore, the MBCA has little relevance when interpreting

---

[3] *MCBA Enactments by States*, AM. BAR ASS'N (Apr. 25, 2025), https://www.americanbar.org/groups/business_law/resources/model-business-corporation-act/.

a contract provision governed by Nevada law. Second, while identical statutory language might have made Delaware law useful for understanding Nevada law, the text of the Delaware advancement statute is broader than that of the Nevada advancement statute. Specifically, under Delaware law, "[e]xpenses (including attorneys' fees) incurred by an officer . . . defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking." 8 Del. Code Ann. Tit. 8, § 145(e). Delaware courts have interpreted "proceeding" to include investigations. *See Kramer v. Liberty Prop. Tr.*, 968 A.2d 120, 133 (Md. App, Ct. 2009); *Homestore, Inc. v. Tafeen*, 888 A.2d 204 211 (Del. 2005); *Krauss v. 180 Life Scis. Corp.*, No. 2021-0714-LWW, 2022 Del. Ch. LEXIS 54, at *11 (Del. Ch. Mar. 7, 2022). In contrast, the Nevada statute does not include the "administrative or investigative action" language in its advancement statute. *See* Nev. Rev. Stat. § 78.751(2). Therefore, the Court finds Anand's interpretation of the word "proceeding" based upon the MBCA and Delaware caselaw unpersuasive.

Moreover, the conclusion that "proceeding" does not include a threatened action is bolstered by reference to dictionary definitions. Nevada courts routinely rely on dictionaries to determine the "plain meaning" of a term. *See, e.g.*, *Elk Point Country Club Homeowners' Ass'n, Inc. v. K.J. Brown, LLC*, 515 P.3d 837, 841 (Nev. 2022) (using Black's Law Dictionary to interpret a term not defined by the Bylaws); *Lucky Lucy D LLC v. LGS Casino LLC*, 534 P.3d 689, 692 (Nev. 2023) (using Merriam Webster's dictionary to define a contract term). Black's Law Dictionary defines "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events *between* the time of commencement and the entry of judgment . . . or . . . [a]ny procedural means for seeking redress from a tribunal or agency." *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

Here, the October 4 communication did not commence a lawsuit. Nor did it provide Hallmark with any procedural means for seeking a judgment from an adjudicatory body. Accordingly, the October 4 Communication is better characterized as a demand letter, which is a "letter by which one party explains its legal position in a dispute and requests that the recipient take some action (such as paying money owed), or else risk being sued." *Demand Letter*, BLACK'S LAW DICTIONARY (12th ed. 2024). In its October 4 Communication, Hallmark alleged Anand breached his fiduciary duty to Hallmark and threatened to sue Anand unless Anand signed a tolling agreement. *See* Doc. 20, Pl.'s App., Ex. A-3, 35. The contents of the October 4 communication fit squarely within the definition of a demand letter.

Courts have found a demand letter does not constitute a "proceeding." *See Recytech USA, Inc. v. Grange Ins. Co.*, 754 F. Supp. 3d 1328, 1346 (N.D. Ga. 2024) ("Even under a liberal construction of civil proceeding, a private demand letter for indemnification . . . does not constitute a civil proceeding [because] [s]uch a letter does not initiate any proceeding before any tribunal or adjudicative body, and it has no *immediate legal effect.*") (internal quotation marks and citations omitted); *Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F. Supp. 2d 1068, 1075 (D. Idaho 1999) ("[A] demand letter from a private organization does not meet the requirements of a civil proceeding."); *see also Hou. Cas. Co. v. Swinerton Builders*, No. 20-CV-03558-NYW, 2022 WL 523434, at *12-13 (D. Colo. Feb. 22, 2022) (collecting cases).

Therefore, the Court finds "proceeding," as used in Article VII, Section 2, unambiguously requires formal commencement before a court or other adjudicatory body. It is unreasonable to construe the sending of a demand letter, like the October 4 Communication, as a proceeding when it created no legal duty for Anand to respond to the communication. Instead, an additional action

would need to be taken by Hallmark, such as actually filing the attached summons and notice in court, for a "proceeding" to commence and compel Anand to respond or face a legal consequence, such as default.

    *iii.    Hallmark did not breach the Bylaws by rejecting Anand's first set of advancement requests*

As Anand bears the burden of proof on his contract claim at trial, he is only entitled to summary judgment if he "establish[es] beyond peradventure *all* of the essential elements of [that] claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). Under Nevada law, "the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages" to establish a breach of contract claim. *Iliescu v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022) (citations omitted). Anand has not established the third element, that Hallmark breached any duty owed to him.

The Bylaws unambiguously imposed no obligation on Hallmark to advance expenses incurred by Anand in responding to the October 4 Communication. Hallmark's mandatory duty to advance the expenses of its officers only arises if the officer is defending a civil action, suit, or proceeding—not mere threats to sue or demand letters. *See* Doc. 20, Pl.'s App., Ex. A-1, 15. As explained above, the October 4 Communication does not constitute a "proceeding." Therefore, Hallmark did not breach the Bylaws by rejecting Anand's advancement requests sent on October 8 and November 1, 2024. Because there is no genuine dispute of material fact that Hallmark did not breach the Bylaws by rejecting Anand's first two advancement requests, the Court **DENIES** Anand's Motion for Partial Summary Judgment.

B.       *Anand's New Breach of Contract Claim*

For the first time in his Motion for Partial Summary Judgment, Anand argues Hallmark breached the Bylaws a second time when it failed to advance the expenses he incurred in defending against Hallmark's counterclaims. *See* Doc. 19, Mot. Summ. J. Br., 13. Notably, Anand sent Hallmark a third request for advancement on February 20, 2025, *see* Doc. 20, Pl.'s App., Ex. A-7, 59, roughly two months after he filed his Amended Complaint.

"Federal law holds generally that an action accrues when a plaintiff has 'a complete and present cause of action,' or, expressed differently, when 'the plaintiff can file suit and obtain relief.'" *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). In other words, "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured," the cause of action accrues. *Id.* (citations omitted). "As a general rule, the plaintiff may not be permitted to cure the defect of non-existence of a cause of action when suit was begun, by amendment." *Pannell v. Associated Press*, 690 F. Supp. 546, 550 (N.D. Miss. 1988) (quoting *Orlando Sports Stadium, Inc. v. Sentinel Star*, 316 So.2d 607, 610 (Fla.App.1975)).

Anand's injury for his final rejected advancement request is premised on Hallmark's filing of counterclaims against him. *See* Doc. 20, Pl.'s App., Ex. A-7, 59. Therefore, Anand's second breach of contract claim did not accrue until after the underlying suit had already begun.[4] The Court declines to decide if Hallmark breached the Bylaws by failing to advance Anand's expenses incurred

---

[4] Additionally, "[a] plaintiff may not raise a new claim for the first time at the summary-judgment stage." *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 682 (N.D. Tex. 2021) (Hendrix, J.) (citing *United States ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012)).

during the period after Hallmark filed its Counterclaims because the claim is not properly before the Court.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Anand's Motion for Partial Summary Judgment against Hallmark on his breach of contract claim and accordingly also **DENIES** his request for Attorney's Fees. Moreover, the Court declines to consider the new factual allegations Anand raises for the first time in his Motion for Partial Summary Judgment. Lastly, because there is no genuine dispute that Hallmark did not breach the Bylaws by rejecting Anand's first two advancement requests, the Court finds Hallmark is entitled to judgment as a matter of law on that issue and therefore **GRANTS** summary judgment on that issue to Hallmark. *See Matter of Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir. 1989) (When "one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment.") (other citation omitted), *abrogated on other grounds by Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347 (5th Cir. 1992); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.1 (4th ed.).

**SO ORDERED.**

**SIGNED: December 9, 2025.**

                                                JANE J. BOYLE
                                              SENIOR UNITED STATES DISTRICT JUDGE