UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAVEEN ANAND, | § | |
| | § | |
| Plaintiff/Counterclaim-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-3181-B |
| | § | |
| HALLMARK FINANCIAL SERVICES, INC., | § | |
| | § | |
| | § | |
| Defendant/Counterclaimant. | § | |

## MEMORANDIUM OPINION AND ORDER

Before the Court is Plaintiff/Counterclaim-Defendant Naveen Anand's Second Motion for Partial Summary Judgment (Doc. 56). For the following reasons, the Court **GRANTS in part** the Motion.

## I.

## BACKGROUND

This contract dispute involves an ex-CEO who, after his former company accused him of wrongdoing, insists that the company advance his costs for defending against those accusations.

Anand previously served as CEO and President of Defendant/ Counterclaimant Hallmark Financial Services, Inc. ("Hallmark"). Doc. 58, Anand Br., 3; Doc. 64, Hallmark Br., 2. Officers of Hallmark are entitled to indemnification and advancement of defense costs for actions they took in their official capacity, as specified under Article VII of the corporation's bylaws (the "Bylaws"). *See* Doc. 58, Anand Br., 3; Doc. 64, Hallmark Br., 4-5. The question presented here is what circumstances trigger Hallmark's obligation to advance defense costs.

This is not the first time the Court has addressed this question. In the First Amended

Complaint ("FAC"), Anand brought a breach of contract claim against Hallmark. He contended that Hallmark was obligated to advance the legal expenses he incurred after Hallmark sent him a demand letter. Doc. 6, FAC, 8-9. In response to the FAC, Hallmark filed its First Answer and asserted counterclaims against Anand based on alleged misconduct during his tenure as CEO. *See generally* Doc. 12, First Answer. Shortly thereafter, Anand brought his First Motion for Partial Summary Judgment on his breach of contract claim. In that Motion, he asserted that Hallmark was obligated to advance his defense costs incurred in responding to the counterclaims. *See* Doc. 19, First Mot. Summ. J. Br., 15.

In December 2025, the Court addressed Anand's First Motion for Partial Summary Judgment in its Memorandum Opinion and Order containing three relevant rulings. *See* Doc. 44, Mem. Op. & Order. First, the Court held that the Bylaws did not impose an obligation on Hallmark to advance expenses Anand incurred in responding to a threatened—but not yet commenced—action, suit, or proceeding. *See id.* at 14. Second, the Court held that Hallmark did not breach the Bylaws by rejecting Anand's first two requests to advance expenses incurred in responding to the threatened action. *See id.* Third, the Court declined to decide at that time if Hallmark breached the Bylaws by failing to advance Anand's expenses incurred during the period after Hallmark filed its counterclaims. *See id.* at 15-16.

Anand then filed a Supplemental Complaint under Federal Rule of Civil Procedure 15(d) to add the following undisputed factual allegations: (1) In response to the FAC, Hallmark filed counterclaims against Anand for alleged actions and omissions during his tenure as CEO; (2) roughly two weeks later, Anand sent Hallmark a third advancement request and signed undertaking that agreed to reimburse Hallmark for any and all expenses advanced to him in the event a court

determines he is not entitled to indemnification; (3) Hallmark did not provide advancement or otherwise respond to the request; and (4) Anand filed a motion to dismiss the counterclaims. *See* Doc. 51, Suppl. Compl., 8-9, 11.

The Supplemental Complaint asserts two claims. First, Anand seeks declaratory and injunctive relief stating that "the Bylaws require Hallmark to advance his fees and expenses incurred in responding to and defending against the Counterclaims—including both those incurred since the filing of the Counterclaims, and those that will be incurred going forward." *Id.* at 10. Second, Anand asserts a breach of contract claim against Hallmark for "refusing to advance Mr. Anand's expenses incurred in responding to and defending against the Counterclaims." *Id.* at 11.

In response to the Supplemental Complaint, Hallmark filed its Second Answer that re-incorporated its counterclaims. *See generally* Doc. 52, Second Answer. Anand then filed his second Motion to Dismiss Hallmark's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly allege a claim upon which relief can be granted. *See generally* Doc. 59, Mot. Dismiss. That same day, Anand also filed his Second Motion for Partial Summary Judgment on the declaratory judgment and breach of contract claims. *See generally* Doc. 56, Second Mot. Summ. J. Hallmark filed a response (Doc. 63), and Anand filed a reply (Doc. 72). The Court now addresses Anand's Second Motion for Partial Summary Judgment below.

## II.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On a motion for summary judgment, the burden is on the movant to prove that no genuine dispute exists as to any issue of material fact. *See Provident Life & Accident Ins.*

*Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine dispute exists for trial, the court must view all evidence in the light most favorable to the non-movant. *See Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence . . . ." *Id.* (other citations omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Finally, the evidence that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citation omitted).

**III.**

**ANALYSIS**

Summary judgment is appropriate because the Bylaws show that Hallmark is obliged to advance Anand's defense costs incurred in responding to the counterclaims as a matter of law. In Section A, the Court addresses Anand's breach of contract claim and Hallmark's affirmative defenses. In Section B, the Court evaluates Anand's request for the Court to declare the Parties' rights and obligations under the Bylaws.

A.      *Anand's Breach of Contract Claim.*

This section is broken down into four parts. In part one, the Court overviews the Bylaws' advancement and indemnification article. In part two, the Court engages in contract interpretation to decide if a plaintiff/counterclaim-defendant that moved to dismiss the counterclaims levied

against him is "defending . . . a civil action." In part three, the Court evaluates whether Anand has carried his summary judgment burden and shown there is no genuine issue of material fact for any element of his breach of contract claim, and he is entitled to judgment as a matter of law . Lastly, in part four, the Court decides if Hallmark can nevertheless raise a dispute of material fact that would preclude summary judgment. Specifically, in part four the Court evaluates Hallmark's four arguments against summary judgment: (1) the doctrine of unclean hands, (2) the implied covenant of good faith and fair dealing, (3) the business judgment rule, and (4) the request for additional discovery.

    1.    <u>An Overview of the Bylaws' Advancement and Indemnification Article.</u>

The relevant provision of the Bylaws, Article VII, titled "Indemnification of Directors, Officers, and Other Persons," contains four sections: "Section 1. Scope of Indemnification"; "Section 2. Expense Advances"; "Section 3. Insurance, Other Financial Arrangements"; and "Section 4. Enforceability." Doc. 57, Anand App., Ex. A-1, at 15-16 (hereinafter, "The Bylaws"). Starting with "Section 4. Enforceability," it provides:

> The provisions of this Article VII are to be deemed an element of the contract or engagement between the Corporation and each person who holds a position giving rise to indemnification. Subject to the conditions and limitations expressed herein and in NRS Sections 78.7502, 78.751 and 78.752, the indemnification provided in this Article VII may thus be enforced against the Corporation as a matter of contractual right.

*Id.* at 16. Section 4 makes Article VII's advancement right a matter of contractual agreement with Hallmark's officers and directors. *See id.* It incorporates by reference three sections of the Nevada Revised Statutes ("NRS"). Relevant to this Court's analysis, NRS section 78.751(3)(b) states that the right to advancement "[c]ontinues for a person who has ceased to be a director, officer, employee or agent."

Next, Section 1 sets up a broad scope of indemnification by requiring that Hallmark indemnify "[t]o the fullest extent authorized, permitted or required by NRS Section 78.7502." The Bylaws, 15. The referenced statute—NRS section 78.7502—lists the circumstances under which a Nevada corporation may choose to, within its discretion, indemnify its directors, officers, employees, and agents. This includes NRS section 78.7502(2), which permits a corporation to indemnify an officer or director that is sued by the corporation if the officer or director (a) is not liable for breach of fiduciary duty under NRS section 78.138, or (b) "[a]cted in good faith and in a manner in which he or she reasonably believed to be in or not opposed to the best interests of the corporation." Indemnification under NRS section 78.7502(2) is not available "for any claim, issue or matter as to which such a person has been adjudged by a court of competent jurisdiction . . . to be liable to the corporation or for amounts paid in settlement to the corporation," except where a court otherwise finds indemnification appropriate upon review of all of the circumstances. So, the effect of Article VII, Section 1 of the Bylaws is to make mandatory on Hallmark all of the indemnification permitted or authorized by NRS section 78.7502.

"Section 2. Expense Advances" controls whether an individual entitled to indemnification under Section 1 is further entitled to advancement of those expenses. It states:

> The expenses of officers and directors of the Corporation incurred in defending a civil or criminal action, suit or proceeding shall be paid by the Corporation as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he or she is not entitled to be indemnified by the Corporation. The provisions of this Section 2 do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

The Bylaws, 15. Accordingly, advancement is available when (1) a director or officer, (2) is defending, (3) an action, suit, or proceeding, and (4) submits a signed undertaking to the corporation. *Id.*

In its prior opinion, the Court, applying Nevada law, focused on the plain meaning of the phrase "action, suit or proceeding" to determine that Hallmark did not have an obligation to provide advancement for threatened actions.  Doc. 44, Mem. Op. & Order, 10-14. Now the Court turns its attention to the word "defending" to determine if Hallmark is obliged to advance Anand's defense expenses related to the counterclaims.

> 2.    "Defending" as Used in the Bylaws Unambiguously Includes Responding to Counterclaims.

"Because the bylaws are a contract, we interpret them as we would any other contract." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 673 (Nev. 2021). A court "initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Id.* (internal quotation marks and citation omitted). "Whether a contract is ambiguous" is "a question of law." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, . . . but ambiguity does not arise simply because the parties disagree on how to interpret their contract." *Id.* (citations omitted). Pursuant to Nevada law, "[i]n the absence of ambiguity or other factual complexities, contract interpretation presents a question of law that the district court may decide on summary judgment." *Id.* (internal quotation marks and citation omitted).

Upon review, the Court finds the advancement provision at issue, Section 2, is unambiguous because it is susceptible to only one reasonable interpretation. Accordingly, the Court enforces it as written and assign its words their "plain, ordinary and popular meaning." *Tompkins v. Buttrum Constr. Co. of Nev.*, 659 P.2d 865, 866 (Nev. 1983) (citations omitted); *see also* Restatement (Second) of Contracts § 202(3)(a) (1981). Nevada courts routinely rely on dictionaries to determine the "plain meaning" of a term. *See, e.g., Elk Point Country Club Homeowners' Ass'n, Inc. v. K.J. Brown, LLC*, 515

P.3d 837, 841 (Nev. 2022) (using Black's Law Dictionary to interpret a term not defined by the Bylaws); *Lucky Lucy D LLC v. LGS Casino LLC*, 534 P.3d 689, 692 (Nev. 2023) (using Merriam Webster's dictionary to define a contract term). Relevant here, Black's Law Dictionary provides seven definitions for the term "defend." Most useful to a legal proceeding context, definition four defines "defend" as "[t]o deny, contest, or oppose (an allegation or claim)." *Defend*, *Black's Law Dictionary* (12th ed. 2024). Likewise, Merriam Webster defines "defend" in the legal context as "to deny or oppose the right of a plaintiff in regard to (a suit or a wrong charged)." Defend, https://www.merriam-webster.com/dictionary/defend (last visited June 9, 2026).

Here, Anand is "defending a civil . . . action" because his Motion to Dismiss contests Hallmark's right to recover on its counterclaims. Hallmark's counterclaims allege in part that Anand is liable for breaching his fiduciary duty to Hallmark. *See* Doc. 12, First Answer ¶¶ 59-60. In his Motion to Dismiss, Anand raises a statute of limitations affirmative defense to dispute Hallmark's right to recover. *See* Doc. 60, Mot Dismiss Br., 1. Therefore, Anand is categorically "defending" in this action. The Court concludes that "defending a civil . . . action" as used in the Bylaws unambiguously includes opposing or contesting counterclaims as the plaintiff/counterclaim-defendant.

3.    Anand Establishes His Breach of Contract Claim as a Matter of Law.

A plaintiff bears the burden of proof on his contract claim at trial and is only entitled to summary judgment if he "establish[es] beyond peradventure *all* of the essential elements of [that] claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). For a breach of contract claim under Nevada law, "the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach

caused the plaintiff damages." *Iliescu v. Reg'l Transp. Comm'n*, 522 P.3d 453, 458 (Nev. Ct. App. 2022) (citations omitted).

There is no dispute as to elements one and two of Anand's breach of contract claim. The Bylaws are a valid contract between Anand and Hallmark. *See* The Bylaws, 16. The rights and obligations of Article VII continue even after Anand departed from Hallmark. *See* NRS section 78.751(3)(b). The Bylaws explicitly permit Anand to enforce his Article VII contractual rights against Hallmark. *See* The Bylaws, 16 ("Article VII may . . . be enforced against the Corporation as a matter of contractual right."). The only performance required by Anand under the Bylaws was to provide Hallmark with a signed undertaking. *See id.* at 15. Anand submitted a signed undertaking to Hallmark with his third advancement request in February 2025. *See* Doc. 57, Anand App., Ex. A-4, at 41-43. Accordingly, Anand performed his obligation under the Bylaws.

Element three requires the Court to determine if Hallmark breached the Bylaws when it refused to advance Anand's legal expenses after receiving Anand's third advancement request and undertaking. Hallmark is obliged to advance defense costs to its directors or officers upon receipt of a signed undertaking when said director or officers are "defending . . . a civil action." *See* The Bylaws, 15. As discussed above, because Anand filed a motion to dismiss, he is defending in this action. Hallmark has not provided advancement to Anand. *See* Doc. 65, Hallmark App., Ex. B, at 4 (noting that Hallmark does not believe Anand is entitled to advancement). Accordingly, Hallmark breached its mandatory advancement obligation, unless—as addressed in the next section—it can show its performance was excused.

The fourth element is damages. Specifically, Anand must show the damages he suffered were caused by Hallmark's breach. Anand asserts that he was damaged by Hallmark's refusal to advance

funds because he has incurred defense expenses in responding to the counterclaims. *See* Doc. 58, Anand Br., 16. As evidence, he attaches attorney's fee invoices and a declaration from counsel stating that the attached invoices reflect fees incurred after Hallmark filed its counterclaims. *See* Doc. 57, Anand App., Ex. A, at 2-3.

In its response, Hallmark does not dispute that Anand has incurred legal fees and expenses due to the counterclaims. Instead, Hallmark argues summary judgment is improper because a fact issue exists as to the amount of damages owed. *See* Doc. 64, Hallmark Br., 13-20. In reply, Anand asserts that summary judgment should not be denied since the only issue in front of the Court is "whether Mr. Anand is entitled to advancement, not in what amount." Doc. 72, Anand Reply, 3.

As there is no dispute that Anand's damages were caused by Hallmark's failure to advance his defense expenses, the Court finds that Anand has carried his summary judgment burden to establish beyond peradventure each element of his breach of contract claim.

4. <u>Hallmark Fails to Raise a Fact Issue and Cannot Avoid Summary Judgment on the Breach of Contract Claim.</u>

The burden then shifts to Hallmark to raise a fact issue that would preclude summary judgment. Hallmark raises four arguments. *See* Doc. 64, Hallmark Br., 7-11. First, it raises the affirmative defense of unclean hands. Second, it argues Anand breached the implied covenant of good faith and fair dealing. Third, it argues the business judgment rule precludes it from breaching the Bylaws. And fourth, notwithstanding its affirmative defenses, Hallmark argues the Court should defer ruling on the summary judgment motion until discovery is conducted. The Court addresses each of Hallmark's arguments in turn.

i. *The unclean hands doctrine is inapplicable.*

"The unclean hands doctrine generally 'bars a party from receiving equitable relief because of that party's own inequitable conduct.'" *L.V. Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.3d 764, 766 (Nev. 2008) (citation omitted). "In determining whether a party's connection with an action is sufficiently offensive to bar equitable relief, two factors must be considered: (1) the egregiousness of the misconduct at issue, and (2) the seriousness of the harm caused by the misconduct." *Id.* at 767 (citations omitted). The doctrine applies to situations in which a party's conduct has been unconscientious, unjust, or in bad faith. *Id.* at 766 (citations omitted).

The Court finds Hallmark's affirmative defense of unclean hands fails as a matter of law because the doctrine bars only equitable relief. Here, Anand's breach of contract claim is not seeking equitable relief. Instead, he seeks monetary damages, so the unclean-hands doctrine is inapplicable. *See Reed v. AMCO Ins. Co.*, No. 3:09-CV-0328-LRH-RAM, 2012 WL 556265, at *2 (D. Nev. Feb. 21, 2012) (applying Nevada law and finding the unclean hands affirmative defense was inapplicable to the plaintiff's breach of contract claim for monetary damages). Likewise, the unclean-hands doctrine cannot apply to his declaratory judgment claim because it is also legal, not equitable. *See D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 570 F. Supp. 2d 1262, 1272 n.4 (D. Nev. 2008) ("A contractual claim to benefits is legal, and thus declaratory relief arising from such a claim is legal." (citation omitted)).

Even putting aside the doctrine's inapplicability, Hallmark has not raised a fact issue on either of the unclean hands doctrine's two factors: (1) the egregiousness of the misconduct at issue and (2) the seriousness of the harm caused by the misconduct. Beginning with factor one, Hallmark has failed to identify actions by Anand that constitute misconduct. Hallmark argues Anand forced

it into an advancement scenario by initiating this lawsuit knowing that Hallmark would have to respond with its counterclaims. *See* Doc. 64, Hallmark Br., 9. This argument is unpersuasive. Hallmark relies only on a conclusory assertion to support its belief that the counterclaims are compulsory. It was Hallmark's choice to assert counterclaims against Anand. There is no evidence indicating Anand acted in bad faith by initiating the lawsuit, and speculation of misconduct is not sufficient to create a fact issue at summary judgment.

Turning to the second factor, Hallmark does not explain how advancing Anand's litigation expenses constitutes a serious harm. The advancement provision comes from Hallmark's own Bylaws. Hallmark does not describe a scenario where it can file claims against Anand and avoid the advancement provision. Nor does it argue that it would not have filed its claims had Anand not first filed the advancement suit. While the litigation may have unfolded in a manner Hallmark does not prefer, that does not mean Anand acted with unclean hands. As the facts in front of the Court are not the type of conduct the doctrine of unclean hands covers, the Court rejects the affirmative defense.

ii.      *Hallmark has not shown Anand breached the implied covenant of good faith and fair dealing.*

Under Nevada law, each contract includes an implied duty of good faith and fair dealing. *See A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 10 (Nev. 1989) (citation omitted). A party breaches the implied duty if his actions "deliberately countervene[] the intention and spirit of the contract." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 922-23 (Nev. 1991). Accordingly, a party that literally complies with the contract can still breach the implied covenant if the movant can show that the party acted with the intent to undermine the purpose of the contract. *See Virgin Valley Water Dist. v. Paradise Canyon, LLC*, 567 P.3d 962, 970 (2025) (citation omitted). But "[a]s a general

principle, there can be no breach of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *Id.* (quoting 23 *Williston on Contracts* § 63:22 (4th ed. updated 2026)). The Nevada Supreme Court has rejected attempts by parties to modify the terms of an agreement using the implied covenant of good faith and fair dealing. *See id.* ("[Defendant] improperly sought to use the implied covenant of good faith and fair dealing to create obligations not contemplated by the contract . . . ." (citation omitted)); *see also Windisch v. Hometown Health Plan, Inc.*, No. 64020, 2015 WL 3649776, at *1 (Nev. June 9, 2015) (collecting cases).

Related to the implied covenant is the common law prevention doctrine. This doctrine states that "any affirmative tender of performance is excused when performance has in effect been prevented by the other party to the contract." *Cladianos v. Friedhof*, 240 P.2d 208, 210 (Nev. 1952) (citation omitted). Accordingly, a party violates the implied covenant of good faith and fair dealing when they prevent their partner in privity from completing their performance under the agreement. *See* Restatement (Second) of Contracts § 245 cmt. a (1981) ("Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him . . . may require some cooperation on his part."). For example, in *Evans v. Dorman*, the Supreme Court of Nevada held that a seller who blocked a buyer from obtaining a price quote could not later claim that her broker did not find a buyer when she prevented the broker from completing his performance. *See* 402 P.2d 652, 654 (Nev. 1965).

Hallmark's attempt to invoke the implied covenant of good faith and fair dealing falls flat. Advancement and indemnification rights under the Bylaws are broad. And Article VII does not exclude suits initiated by the director or officer. Indeed, the Bylaws explicitly permit Anand to

enforce Article VII against Hallmark as a contractual right. As discussed above, Anand has acted in accordance with the rights afforded him under the Bylaws. In arguing that Anand cannot enforce his contract rights under Article VII without breaching the implied covenant, Hallmark seeks to add provisions not included in the terms of the Bylaws, which it cannot do. *See Virgin Valley*, 567 P.3d at 970.

Hallmark's invocation of the prevention doctrine also misses the mark. Hallmark does not argue that Anand prevented it from completing its performance. Instead, Hallmark asserts it did not perform because it believed the Bylaws did not require advancement to Anand. *See* Doc. 65, Hallmark App., Ex. B., at 4. Hallmark's decision not to perform, free from interference or sabotage, is not excused under the prevention doctrine.

The advancement obligation at issue did not arise because Anand filed his lawsuit. Instead, the obligation arose because Hallmark filed its counterclaims, causing Anand to defend in this action. Accordingly, Anand did not manufacture a condition precedent to obtain advancement. The advancement obligation derives from Hallmark's own actions in this litigation and the Bylaws.

iii.    *The business judgment rule does not apply to breach of contract claims.*

"The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct.*, 399 P.3d 334, 341-42 (Nev. 2017) (citation omitted). The business judgment rule is codified within NRS section 78.138, which "provides for the sole circumstance under which a director or officer may be held individually liable for damages stemming from the director's or officer's conduct in an official capacity." *Chur v. Eighth Jud. Dist. Ct.*, 458 P.3d 336, 340 (Nev. 2020). To establish a breach of

fiduciary duty claim against an officer or director, the movant must overcome the business judgment rule presumption. *See Streeter v. Izadi*, No. 2:18-CV-01916-RFB-VCF, 2021 WL 4301480, at *3 (D. Nev. Sept. 21, 2021).

Hallmark argues the business judgment rule excuses its performance. Namely, Hallmark argues the Court should defer to the Board's conclusion that the Bylaws do not require it to advance expenses to Anand. *See* Doc. 64, Hallmark Br., 11.

"[T]he business judgment rule does not serve as a defense to actions for breach of contract." *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, No. 3:05-CV-2097-B, 2007 WL 9712214 (N.D. Tex. Sept. 21, 2007) (Boyle, J.) (citations omitted). "To permit the business judgment rule to provide a defense to a breach of contract claim would lead to the 'absurd result' that a company official could intentionally breach a term of a contract so long as the breach was in the best interest of the company." *Sethi v. Potomac Valley Orthopaedic Assocs., Chartered*, No. TDC-24-1062, 2024 WL 3606595, at *7 (D. Md. July 31, 2024) (citing *Advanced Training Grp. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493, at *12 (E.D. Va. Aug. 7, 2020)). Hallmark presents no authority to justify extending the business judgment rule to breach of contract actions against a company, so the Court declines to apply the rule to this action.

  *iv.*  *The Court declines to defer ruling on the summary judgment motion.*

Federal Rule of Civil Procedure 56(d) permits a court to "defer" or "deny" a summary judgment motion if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." To successfully request deferred consideration under Rule 56(d), a party must "show (1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *January v. City of Huntsville*, 74 F.4th

646, 651 (5th Cir. 2023) (citation omitted). "[I]f a party 'fails to explain what discovery it had, why it was inadequate and what it expected to learn from further discovery' and instead offers only 'vague assertions of the need for additional discovery,' it will not be entitled to a continuance." *Bryant v. Bank of Am. N.A.*, No. 3:15-CV-3818-B, 2016 WL 8715621, at *2 (N.D. Tex. June 3, 2016) (Boyle, J.) (brackets omitted) (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999)).

Hallmark asserts that summary judgment is premature as it has not been afforded discovery. *See* Doc. 64, Hallmark Br., 2, 9. In support, Hallmark attaches the declaration of its counsel Ms. Ward. *See* Doc. 65, Hallmark App., Ex. A., at 2-4.

The Court declines to grant a continuance. Despite what Hallmark asserts in its briefing, discovery began more than nine months ago. *See* Doc. 40, Order, 1 (denying motion to stay discovery). Nowhere in Ms. Ward's declaration does she explain what discovery Hallmark has had, why it was inadequate, and how the requested information would create a fact issue on its affirmative defenses. Indeed, Ms. Ward's declaration is almost identical to the one Hallmark raised in response to Anand's First Motion for Summary Judgment. *Compare* Doc. 32, Hallmark App., Ex. A, at 2-4, *with* Doc. 65, Hallmark App., Ex. A., at 2-4. Accordingly, Hallmark could have specifically sought discovery on these issues for over a year. Its failure to seek needed discovery does not require a continuance.

Because Hallmark has failed to raise a fact issue on any element of Anand's breach of contract claim, summary judgment on the breach of contract claim as to liability is appropriate. The amount in damages will be determined at a later time.[1]

---

[1] Under Federal Rule of Civil Procedure 56, a court may enter judgment as to liability and reserve a decision as to damages for a later proceeding. *See* 10B *Wright & Miller's Federal Practice & Procedure* § 2736 (4th ed. 2016).

B.      *Anand Is Entitled to Summary Judgment on His Declaratory Judgment Claim.*

Anand also requests that this Court grant it summary judgment on its declaratory judgment claim. Hallmark makes no specific argument opposing Anand's request for declaratory relief.

Relevant to this action, the Federal Declaratory Judgment Act in part states, "[i]n a case of actual controversy within its jurisdiction . . . any Court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "A request for a declaratory judgment need not be permitted if it adds nothing to the suit." *UST-Mamiya, Inc. v. True Sports, Inc.*, 441 F. Supp. 3d 382, 396 (N.D. Tex. 2020) (Boyle, J.) (quoting *Merritt, Hawkins & Assocs., LLC v. Gresham*, No. 2:13-CV-00312-P, 2014 WL 685557, at *3 (N.D. Tex. Feb. 21, 2014) (Solis, J.)). But "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

District courts in this circuit have found a declaratory judgment action interpreting a contract for ongoing and future conduct is not duplicative of a breach of contract action addressing past conduct. *See Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F. Supp. 2d 844, 856 n. 15 (N.D. Tex. 2008) (Fitzwater, C.J.) (finding declaratory judgment appropriate because declaration that insurer had an ongoing duty to defend insured plaintiff in separate litigation was distinct from the relief for past breach addressed in breach of contract claim); *GEL Offshore Pipeline, LLC v. Shell Pipeline Co. LP*, No. CV H-21-1099, 2021 WL 4976723, at *3 (S.D. Tex. Oct. 8, 2021) (finding movant's declaratory judgment request was not duplicative of breach of contract claim because the declaratory judgment request pertained to "ongoing and future duties of all parties to the contracts").

Here, the Court finds that Anand's declaratory judgment claim is distinct from his breach of contract claim. As Hallmark's counterclaims are live and contested, its obligation to advance Anand's expenses is ongoing. Accordingly, the declaratory judgment claim addresses the future obligations and rights of the parties, while the breach of contract claim addresses Hallmark's past breach.

As discussed above, the Court concludes that Hallmark has a duty under the Bylaws to advance the expenses Anand incurs in opposing the counterclaims. Accordingly, Anand is entitled to summary judgment on his declaratory judgment claim.

## IV.

## CONCLUSION

The Court **GRANTS in part** Anand's Second Partial Motion for Summary Judgment (Doc. 56). Specifically, the Court **GRANTS** summary judgment for Anand on his breach of contract claim as to liability. The Court also **GRANTS** summary judgment for Anand on his declaratory judgment claim.

The Court **DECLARES** that Hallmark is obligated under the Bylaws to advance the defense expenses Anand incurs in opposing Hallmark's counterclaims in this civil action as they are incurred and in advance of the final disposition of this case.

It is **FURTHER ORDERED** that the parties shall meet and confer on the issue of breach of contract damages. The parties must confer in person. In the event the parties reach an agreement, they shall notify the Court and may, if appropriate, file a proposed order for the Court's review. In the event the parties are unable to reach an agreement, the damages issue will be deferred for a later proceeding. The parties are **ORDERED** to submit a joint status report that describes the outcome

reached at the conference by **July 10, 2026**.

**SO ORDERED.**

**SIGNED: June 11, 2026.**

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE